**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

CAROL M. LEONARD,

                Plaintiff,

-vs-                             Case No.  2:05-cv-499-FtM-29SPC

JO ANNE B. BARNHART
Commissioner of Social Security ,

                Defendant.

_____

## REPORT AND RECOMMENDATION[1]

**TO THE UNITED STATES DISTRICT COURT**

_____This matter comes before the Court on the Plaintiff, Carol M. Leonard's, Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on October 14, 2005.  The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #17) on June 16, 2006.  The Commissioner filed her Memorandum of Law in Support of the Commissioner's Decision (Doc. #18) on July 12, 2006.  Thus, the Motion is now ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

## FACTS

### *Procedural History*

The Plaintiff previously filed an application for a period of disability and disability insurance benefits on June 5, 1992. (Tr. 17, 305, 585).  The claim was denied initially and upon reconsideration. After a hearing on July 29, 1997, an administrative law judge (ALJ) issued a hearing decision denying Plaintiff's claim on November 10, 1997,  finding the Plaintiff could perform her past relevant work as a telemarketer. (Tr. 17, 285, 290, 582, 585, 596-97 finding 6; Tr. 604). The Appeals Council denied Plaintiff's request for review, and the Plaintiff did not further appeal the ALJ's November 10, 1997, decision, making it final and binding through the date of the ALJ's decision.  (Tr. 636).  20 C.F.R. §§ 404.955, 404.981, 404.987, 422.210(a) (2006).

The Plaintiff filed her current application for a period of disability and disability insurance benefits in February 2002, alleging she became unable to work on November 11, 1997. (Tr. 59). As noted in the ALJ's decision, Plaintiff's Counsel explained that this was done to avoid any issue of res judicata in light of the prior Judge's decision of November 10, 1997.  (Tr. 18).  The ALJ determined that the issue at this point was whether the Plaintiff was disabled from November 11, 1997 through December 31, 1997 (Relevant Period).   (Tr. 18). After being denied initially and upon reconsideration, the Plaintiff requested a hearing which was held on April 7, 2004, before ALJ Joseph G. Dail, Jr.  (Tr. 50, 54, 550). On July 28, 2004, the ALJ issued a hearing decision denying Plaintiff's claim. (Tr. 14).  The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 6). 20 C.F.R. §§ 404.955, 404.981, 422.210(a). The Plaintiff has exhausted her administrative remedies, and this case is ripe for review under 42 U.S.C. § 405(g).

2

*Plaintiff's History*

The Plaintiff was born November 1, 1954, making her forty-nine (49) years old at the time of the hearing. (Tr. 18, 54). The Plaintiff has a high school education and a past relevant work history as a telemarketer and retail clerk. (Tr. 18). The Plaintiff alleges an onset disability date of November 11, 1997, due to rheumatoid arthritis in her hands and knees and degenerative disc disease. (Tr. 18).

*Medical History*

The medical records show that in October 1988, the Plaintiff saw Dr. Gerald Wrobel for injuries sustained as a result from sitting in a broken chair at work. (Tr. 20, 549). The Plaintiff reported persistent headaches, left neck, shoulder, arm and back pain, as well as bilateral leg pain. (Tr. 20). X-rays of the cervical spine were taken and were within normal limits. (Tr. 549). Physical examination revealed decreased range of motion of lumbar spine with moderate paravertebral muscle spasm. (Tr. 549). Straight leg raise was negative bilaterally. (Tr. 549). A neurologic examination of the upper and lower extremities was within normal limits. (Tr. 549). Dr. Wrobel opined that the Plaintiff had both a lumbar and cervical strain. (Tr. 549). The Plaintiff was treated with physical therapy and medication. (Tr. 549).

On March 22, 1989, Dr. Newland's treatment notes reflect that the Plaintiff had returned to work but on her first day back, she began to experience an acute flare-up of lumbar pain which lasted for two (2) hours. (Tr. 20). The Plaintiff was treated with an injection of Decadron and Xylocaine which produced immediate relief from her symptoms. (Tr. 20). The treatment records from April 1989, revealed that the Plaintiff lasted only two and one half hours on the job and that she had not returned to work. (Tr. 20). The treatment notes also showed that the Plaintiff continued to have

3

myofascial rippling spasms and intermittent facette cracking and popping in her neck.  (Tr. 20, 125).

In February 1991, the Plaintiff developed a "rheumatoid nodule" on her right elbow. (Tr. 20). On February 28, 1991, the Plaintiff underwent a procedure in which the mass was excised from the elbow.  (Tr. 116).

The Plaintiff did not return to Dr. Newland until June 6, 1994. (Tr. 387).  The Plaintiff returned to re-establish medical direction.  (Tr. 387).  Dr. Newland noted  the Plaintiff was receiving treatment from another physician who had accused her of having more mental than physical problems. (Tr. 20, 387).  The Plaintiff was also noted to be receiving treatment from Dr. Kenneth Piotrowski. (Tr. 20, 387).  The Plaintiff's chief complaints involved the left lower dorsal para midline  region, cervicoscapular discomfort and intermittent parasthesias and numbness running into the hands bilaterally.  (Tr. 387).  Upon re-examination, Dr. Newland noted the Plaintiff's increased weight and blood pressure.  Dr. Newland also noted that there were palpable myofascial trigger points over both trapezii, which were tender.  (Tr. 387).  There was moderate tenderness in the left scalene region, milder on the right.  (Tr. 387).  There was tightness and tenderness along the left lumbar dorsal erector spinae, and vague tenderness over the left buttock and iliotibial band region.  (Tr. 387).  Dr. Newland opined that it would be premature in diagnosing the Plaintiff as it was an ongoing problem since 1990, and followed a "characteristic pattern".  (Tr. 388).  Dr. Newland explained to the Plaintiff that the best long term benefits would occur  with stretching, strengthening, and building up endurance of the myofascial structures.  (Tr. 21, 387-388).

During the time period of July 14, 1994, through November 26, 1996, the Plaintiff was treated by Dr. Y. Memon, a neurosurgeon.  (Tr. 21).  The Plaintiff reported on July 14, 1994, that she had a history of low back and neck injury.  (Tr. 21, 468).  The Plaintiff reported that her neck pain has

4

improved but her low back pain continued to get worse.  (Tr. 468).  Upon examination, the systemic exam was normal. (Tr. 468).  Neurologically, the Plaintiff was intact except for limitation of cervical spin movements of minimal degree. (Tr. 468).  Examination of the lumbosacral spine revealed a moderate degree of limitation with tenderness in the paraveretebral area.  (Tr. 468).  The physician noted the Plaintiff had been using a TENS unit and had been prescribed the medications Pamelor and Klonopin.  (Tr. 21). Dr. Memon reported no other neurological findings in the Plaintiff's upper extremities.  (Tr. 468).  Dr. Memon prescribed a course of physical therapy treatment.  (Tr. 468). Progress notes show that the Plaintiff reported physical therapy sessions were not helping very much, and her symptoms actually worsened.  (Tr. 459).  An MRI was requested and revealed desiccation and mild bulging of the L5 disc.  (Tr. 445). No focal herniation was noted nor any significant spinal stenosis.  (Tr. 445).  Dr. Memon further noted that the Plaintiff should continue to exercise at home and perhaps return to work. (Tr. 445).

On August 2, 1996, Dr. Memon reported the Plaintiff had a moderate degree of loss of motion in the lumbar spine and mild to moderate degree of muscle spasm in the lumbar spine; however, he further noted that there were no objective neurological findings during physical examination.  (Tr. 22). The Plaintiff's grip strength and fine dexterity were reported as normal as well as her gait and station.  (Tr. 444).  The Plaintiff was further reported to have the ability to squat, walk on her toes, and heels, and she did not require an assistive device for ambulation.  (Tr. 22, 444).

On November 26, 1996, Dr. Memon completed a Medical Assessment of Ability to Do Work Related Activities. (Tr. 443).  Dr. Memon opined that the Plaintiff had the ability to stand/walk for two (2) hours during an eight (8) hour workday, and sit for two (2) hours during an eight (8) hour day.  (Tr. 443).  Dr. Memon further opined that the Plaintiff had the ability to sit, stand, or walk for

a total of four (4) hours during an eight (8) hour work day (Tr. 443).

On August 29, 1996, the Plaintiff was evaluated by a State Agency medical disability expert. (Tr. 489-505). The disability expert concluded that the Plaintiff could perform a restricted range of light work. (Tr. 498-505).

On November 11, 1996, the Plaintiff underwent a consultative examination with Dr. Yoel Drucker at the request of the State Agency. (Tr. 506-510). Dr. Drucker noted that the Plaintiff developed rheumatoid arthritis about seven (7) to eight (8) years ago and that this was manifested by diffuse aches and pain, and arthritis that involved her upper and lower extremities. (Tr. 506). Dr. Drucker reported that the Plaintiff had been treated with non-steroidals and had never been treated with disease modifying agents. (Tr. 506). The Plaintiff's chief complaints included pain in the ankle, hands, wrists, shoulders and has morning stiffness for approximately one (1) to two (2) hours. (Tr. 506). Physical examination revealed mild swelling of the Plaintiff's right ankle and no evidence of joint effusion in her knees. (Tr. 506). The Plaintiff had normal range of motion of both hips. (Tr. 506). The Plaintiff exhibited decreased grip strength to thirty (30) percent of normal on her right side and fifty (50) percent of normal on her left side. (Tr. 507). The Plaintiff was noted to have mild synovitis of her second left PIP and second through fourth MCP's bilaterally, and this was noted to be worse on the left side. (Tr. 22, 507). Examination of the Plaintiff's elbow was unremarkable and showed only mild pain on extreme flexion and extension in her wrists. (Tr. 22, 507). The Plaintiff's straight leg raising was negative bilaterally. (Tr. 22, 507). The Plaintiff demonstrated tenderness over the lumbosacral spine and the paraspinal muscles in that area, however, the Plaintiff's gait was normal. (Tr. 22, 507). Dr. Drucker opined that it would be difficult for the Plaintiff to work due to her arthritis but that improvement was possible if she was treated appropriately. (Tr. 22, 508).

6

*Psychological Evaluations*

On February 22, 1994, the Plaintiff presented to Dr. Kenneth Pitrowski for a psychiatric evaluation with permission to start treatment.  (Tr. 429).  The Plaintiff was described as angry and agitated.  (Tr. 21, 430).  The Plaintiff's intellectual functioning was above average with an estimated full scale IQ of approximately 119.  (Tr. 440).  The Beck Inventory revealed the Plaintiff to have severe depression.  (Tr. 21, 440).  The results of the Plaintiff's MMPI suggested significant problems.  (Tr. 440).  The Plaintiff returned for a second clinical interview on March 2, 1994.  (Tr. 440).  The mental status exam was similar to her last visit.  (Tr. 441).  The Plaintiff was more agitated and Dr. Piotrowski was unable to calm her down.  (Tr. 441).  Dr. Piotrowski noted that the Plaintiff looked more like agitated depression than anxiety disorder, although there were still some symptoms suggestive of anxiety or panic attacks.  (Tr. 441-442).  The plan was to start Soma 350mg.  (Tr. 442).

On March 8, 1994, the Plaintiff presented to Dr. Piotrowski for a session.  (Tr. 426).  The Plaintiff stated she took Prozac for about a week but discontinued use due to the drug's bad publicity.  (Tr. 426).  The plan was to continue Soma 350 mg, start Klonopin .5 mg, Imipramine 10mg and to begin telephone conferences because of its cost effectiveness.  (Tr. 426).  On March 22, 1994, the Plaintiff reported that her sleep disturbances were less than before.  (Tr. 423).  The Plaintiff stated that she developed uncomfortable dreams every night.  (Tr. 423).  Dr. Piotrowksi adjusted the Plaintiff's medication.  (Tr. 423).

On April 4, 1994, the Plaintiff reported that her energy level was better and the bad dreams had gone away.  (Tr. 422).  On April 11, 1994, the Plaintiff stated that she was not tolerating the Imipramine well and was feeling more depressed.  (Tr. 421).  Dr. Piotrowski adjusted her medication several times because the Plaintiff continued to report much agitation and depression.  (Tr. 413-421).

7

By July 26, 1994, the Plaintiff was less depressed than she had been in the past but suffered a severe anxiety attack in the morning.  (Tr. 413).  Dr. Piotrowksi adjusted her medication.  (Tr. 413).  The Plaintiff continued treatment with Dr. Piotrowski where she reported  problems with pain.  (Tr. 411).  On October 26, 1995, the Plaintiff reported an increase in back discomfort and denied having any memory problems during the week.  (Tr. 21).  Dr. Piotrowski stated that the Plaintiff's immediate and short term memory seemed to be "okay".  (Tr. 402).  On November 14, 1995, the Plaintiff was more aware of "memory lapses".  (Tr. 401). Although the Plaintiff seemed to be bothered a bit more, she was not ruminating about it and had a positive attitude.  (Tr. 401).  Dr. Piotrowski discussed with the Plaintiff the connection between the medications and her memory dysfunction.  (Tr. 21).  On January 8, 1995, the Plaintiff reported experiencing no panic attacks since her last appointment and on March 5, 1996, Dr. Piotrowski noted that the Plaintiff's panic attacks remained under control, and that the Plaintiff continued to control her pain with a positive attitude.  (Tr. 21, 399).

On June 20, 1996, the Plaintiff reported to Dr. Piotrowski.  (Tr. 534).  She complained that her pain problems continued and was upset and distraught.  (Tr. 534).   On July 8, 1996, Dr. Piotrowski stated that the Plaintiff's mood and anxiety was better.  (Tr. 535).  Dr. Piotrowksi noted that the Plaintiff's condition was holding despite her situational problems. (Tr. 540).  On May 6, 1997, the Plaintiff reported some knee problems but no back problems.  (Tr. 540).

On August 8, 1996, a State Agency physician concluded that the Plaintiff's mental impairments imposed slight limitations on the areas of activities of daily living, in social functioning, and that the Plaintiff had often experienced limitations in her ability to concentrate, persist, or pace. (Tr. 24,490).

On January 9, 1997, the State Agency consultant again concluded that the Plaintiff could

8

perform a restricted range of light work.  (Tr. 24, 530-533). It was opined that the Plaintiff's mental impairments imposed only slight limitations in activities of daily living, and in concentration, persistence or pace.  (Tr. 24, 532).  It was further concluded that the Plaintiff had moderate limitations in the area of social functioning.  (Tr. 24, 532).

### Administrative Law Judge's Decision

Upon consideration of the record, the ALJ found that the Plaintiff met the non-disability requirements for a period of disability and Disability Insurance Benefits as set forth in Section 216(I) of the Social Security Act and was insured for benefits only through December 31, 1997.  (Tr. 28). The ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability.  (Tr. 28).  The ALJ found that the Plaintiff's rheumatoid arthritis, tricep tendonitis, and lumbar strain, as well as depression and anxiety, are considered "severe" based on the requirements in the Regulations 20 C.F.R § 404.1520(c).  (Tr. 28).  However, the ALJ found that these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.  (Tr.28).  The ALJ determined that the Plaintiff's allegations regarding her limitations during the Relevant Period were not credible.  (Tr. 28). The ALJ further determined that the Plaintiff had during the Relevant Period the residual functional capacity to perform less than a full range of light work.  (Tr. 28).  The Plaintiff had the ability to lift twenty (20) pounds occasionally and ten (10) pounds frequently.  (Tr. 28).  The Plaintiff was unable to perform a job that involves heights or dangerous machinery, and frequent handling and feeling. (Tr. 28).  The ALJ found that Plaintiff cannot perform work that requires extended concentration or attention but she was able to perform simple, repetitive tasks.  (Tr. 28).  The ALJ found the Plaintiff's past relevant work as a telemarketer did not require the performance of work-related activities

9

precluded by her residual functional capacity (20 C.F.R § 404.1565).  (Tr. 28).  Having found that

the Plaintiff had the RFC to perform less than a full range of light work and could return to her past

relevant work,  the Plaintiff was found not to be under a "disability" as defined in the Social Security

Act, at any time through the date of the decision.  20 C.F.R. §404.1520(g).

## THE STANDARD OF REVIEW

### A.  Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct

legal standards,  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the

findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct.

1420, 28 L. Ed 2d 842 (1971).  In evaluating whether a claimant is disabled, the ALJ must follow the

sequential inquiry described in the regulations[2].  See 20 C.F.R. §§ 404.1520(a), 404.920(a).  The

Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §

405(g).  Substantial evidence is more than a scintilla-i.e., the evidence must do more than merely

---

[2]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:
  Step 1.  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
  Step 2.  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.
  Step 3.  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.
  Step 4.  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.
  Step 5.  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  See 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 585 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.3d 1356, 1458 (11th Cir. 1991).  The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court  "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

### B.  Reversal and Remand

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir.

1994); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Jackson, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); Davis, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards). Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to allow ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and remanding to consider psychiatric evaluation); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984)

(remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level. Jackson, 99 F.3d at 1090 - 92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994). With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[3] Id.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any

---

[3]The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

## DISCUSSION

The Plaintiff argues that (1) the ALJ's finding that Plaintiff is not disabled because she can return to her past relevant work as a "telemarketer" is not supported by substantial evidence;  (2) the Plaintiff's work as a telemarketer was an "unsuccessful work attempt" and shoud not be considered "past relevant work" as the basis for a step 4 finding; and (3) the ALJ's residual functional capacity (RFC) finding is not supported by substantial evidence.  The Defendant argues the ALJ's assessment of the Plaintiff's RFC during the relevant period as well as her past relevant work was supported by substantial evidence.

### (1) Whether the ALJ Erred in Finding the Plaintiff Can Return to Her Past Relevant Work as a Telemarketer

The Plaintiff argues that the ALJ erred in finding that she could return to her past relevant work as a telemarketer because there is a lack of evidence in the record that indicates she actually held a telemarketer's position. The Defendant argues that substantial evidence supports the ALJ's finding that the Plaintiff's work as a telemarketer was past relevant work.  The Defendant further argues that the ALJ did not err because the Plaintiff did not inform the current ALJ that she disputed the prior ALJ's past relevant work finding.

The ALJ considered the evidence from the previous record because the Plaintiff did not

14

present new evidence as it related to the relevant period, November 11, 1997, through December 31,1997. (Tr. 18). The ALJ specifically pointed out that the medical evidence contained within the current record was essentially medical records from the prior record and their relevancy to the period of time under consideration. (Tr. 18). Therefore, the current ALJ's focus included the prior unappealed record and decision of the prior ALJ.

The prior ALJ, in his decision, concluded that the Plaintiff was capable of returning to her past relevant work as a telemarketer. (Tr. 597). During the prior hearing on July 29, 1997, the ALJ inquired as to the Plaintiff's past relevant work. (Tr. 612). The Plaintiff testified that she performed a number of retail jobs. (Tr. 609-611). The ALJ asked the Plaintiff if retail sales clerk seemed to be the only work experience she had within the last 15 years. (Tr. 612). The Plaintiff responded by stating that she had prior experience in "telephone sales". (Tr. 611). She could not remember specific dates but estimated that it was approximately over ten (10) years ago when she sold texture coating, vinyl siding and air conditioning for a period of twenty-four (24) months. (Tr. 611). Consequently, the ALJ found that the Plaintiff "described employment as a telephone solicitor to an extent which would constitute substantial gainful activity and thus past relevant work". (Tr. 630).

The Plaintiff argues that her Work History Report, a Disability Report where she lists three (3) jobs in retail sales, and a comprehensive hearing brief that outlined that Plaintiff's past relevant work, did not reflect a telemarketer position. However, contrary to the Plaintiff's argument, it is the Plaintiff's own testimony during the July 29, 1997, hearing that confirmed the existence of past employment as a telemarketer. (Tr. 630). Although the Plaintiff did not remember specific dates, she did recall what products were sold and that she did this type of job for a period of twenty-four (24) months. (Tr. 630). Despite the omission on the work history report and disability report, the Plaintiff

15

herself described her history as a telemarketer to the extent that the ALJ was able to determine that it constituted substantial gainful activity.

The Plaintiff further fails in her argument because at no point did the Plaintiff or Counsel raise the issue to the current ALJ that the prior decision was in error regarding her past relevant employment.  An administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.  Street v. Barnhart, 2005 WL 1164202 (11th Cir. May 18th 2005) (citing Pena v. Chater, 76 F.3d 906, 909 (8th Cir. 1996).  Thus, the ALJ did not find reason to dispute the prior ALJ's finding as to her past relevant work and was not required to probe further.

Therefore, the ALJ supported his determination that the Plaintiff had past relevant work as a telemarketer with substantial evidence in record.–specifically, the Plaintiff's own testimony.  Therefore, utilizing the information incorporated into the current record from the Plaintiff's own testimony, the ALJ made a proper determination as to the Plaintiff's past relevant work as a telemarketer.

### (2) Whether the ALJ Erred by Finding the Plaintiff's Past Relevant Work as a Telemarketer Constituted Substantial Gainful Activity

The Plaintiff argues that her attempts at telemarketing work should be considered unsuccessful work attempts and did not constitute gainful activity.  The Plaintiff further argues that the ALJ erred because he should have probed further to establish whether the Plaintiff's telemarketing experience constituted substantial gainful activity.  The Defendant states the ALJ had no reason to further inquire because the prior decision was not in dispute.  Moreover, although the current application involved a different time period, the Plaintiff did not offer new evidence that pertained to

16

the short relevant time period under review.

The Regulations define substantial gainful activity as work activity that is both substantial and gainful: (a) substantial work activity: substantial work activity is work activity that involves doing significant physical or mental activities. [The claimant's] work may be substantial even if it is done on a part-time basis or if [the claimant] do[es] less, get[s] paid less, or [has] less responsibility than when [the claimant] worked before, (b) Gainful work activity.  Gainful work activity is work activity that [the claimant] do[es] for pay or profit.  Wallace v. Barnhart, 256 F.Supp.2d 1360, (S.D. Fla. 2003) (citing 20 C.F.R. §§ 404.1572 (2003).  The Social Security Administration generally considers a work effort lasting three months or less because of the claimant's impairments as an unsuccessful work attempt and thus, it is not considered evidence of an ability to engage in substantial gainful activity.  Id. at 1375.

Here, the Plaintiff testified that she has past relevant work as a telemarketer and telemarketing work was performed for a total of twenty-four (24) months.  (Tr. 612).  The prior ALJ stated that the Plaintiff described telemarketing to an extent where it constituted substantial gainful activity. (Tr. 630).  The Plaintiff, nor her legal representation, disputed this finding on appeal.

As the current ALJ proceeded with his analysis for the relevant period, there was no reason to believe the Plaintiff's past relevant work listed by the prior ALJ was invalid.  The issue was not raised by the Plaintiff or legal Counsel.  Moreover, an administrative law judge is under no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability. See French v Massanari, 152 F. Supp 2d 1329, 1337-1338 (M.D. Fla. 2001) (citing Bowen v Yuckert, 482 U.S. 137, 146 n. 5, 107 S. Ct. 2287, 2296, L. Ed. 2d 119 (1987) (holding that it is not unreasonable to require the claimant, who is in better position to provide

17

information about his own medical condition, to do so); Street, 2005 WL 1164202. Therefore, the ALJ was not under an obligation, as suggested by the Plaintiff, to establish that the Plaintiff's past relevant work history as a telemarketer was or was not substantial gainful employment. This is especially true in this instance because the prior ALJ had found that her past relevant work as a telemarketer was substantial gainful employment and that finding was not disputed by the Plaintiff nor her counsel. Thus, the current ALJ found the Plaintiff to have retained the same RFC for the following six (6) weeks up to her date last insured (DLI). It only stands to reason that the Plaintiff, having retained the same RFC for the relevant period, would have retained the capability of performing the same occupation that was addressed by the prior ALJ.

(3) *Whether the ALJ Erred in Finding the Plaintiff Had an RFC For a Less Than Full Range of Light Work*

The Plaintiff bears the burden of proving she cannot meet the physical and mental demands of [her] past relevant work, either as [she] performed it in the specific past employment or as the work is generally performed in the national economy. Paige vs. Apfel, 2001 WL 936198 (S.D. Ala. 2001) (citing Jackson v. Bowen, 801 F.2d 1291, 1293). If a Social Security claimant "can still do [the] kind of work" he has done in the past, he will be found not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986). Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986). The RFC is an assessment which is based upon all the relevant evidence of a claimant's remaining ability to do work despite his impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). The determination of RFC is within the authority of the ALJ and along with the Plaintiff's age, education, and work experience the RFC is considered in determining whether the claimant can work. Lewis, 125 F.3d at1440 (citing 20 C.F.R. § 404.1520(f)). The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in

18

weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the providence of the Commissioner. 20 C.F.R. § 404.1527 (e).

The Plaintiff argues, to the extent that the Plaintiff ever successfully performed the job of telemarketer, the ALJ's assessment of the Plaintiff's RFC was incorrect and she was, in fact, incapable of performing the demands of a telemarketer as described in the Dictionary of Occupational Titles (DOT). The Defendant argues that the ALJ's findings were identical to the prior ALJ's decision. Additionally, the Defendant argues that although the DOT definition trailers are considered, the testimony of a vocational expert is controlling.

The ALJ found that the Plaintiff retained the residual functional capacity to perform less than a full range of light work. (Tr. 27). In his decision, the ALJ stated as follows:

> The claimant has the ability to lift 20 pounds occasionally and ten pounds frequently. The claimant is unable to perform a job that involved heights or dangerous machinery, and frequent handling and feeling. The claimant cannot perform work that requires extended concentration or attention, but she is able to perform simple repetitive tasks. Specifically, the claimant's mental impairments impose mild limitations in the areas of activities of daily living and in maintaining social functioning. The claimant has moderate limitations in the area of concentration, persistence, or pace, and has never experienced an episode of decompensation. These findings are based upon the medical findings and opinions rendered before the prior Judge's decision, which were affirmed by the Appeals Council, and there is no credible medical or other evidence to show that her condition worsened during the Relevant Period. (Tr. 27).

The ALJ found that, during the relevant period, the Plaintiff retained the same RFC as determined by the prior ALJ. Therefore, the issue is whether the ALJ made a proper determination at Step 4 as to whether she is capable of performing the demands of a telemarketer, based upon her RFC.

First, the Plaintiff contends that the Plaintiff's RFC and the mental demands of telemarketing

are in conflict.   In support of her argument, the Plaintiff points to the Dictionary of Occupational

Titles (DOT) 299.357-014 which defines the position telemarketer.   DOT describes telemarketing

as semi-skilled, sedentary work, exerting up to ten (10) pounds occasionally (1/3 of the time) and/or

a negligible amount of force frequently (1/3 to 2/3 of the time).   Sedentary work involves sitting most

of the time, but may involve walking or standing for brief periods of time.   Jobs are sedentary if

walking and standing are required only occasionally and all other sedentary criteria are met.   The

DOT assesses a specific vocational preparation (SVP) of Level 3[4].   The DOT assigns the semi-skilled,

sedentary position a reasoning level of 3.

The Eleventh Circuit has held that when the VE's testimony conflicts with the DOT, the VE's

testimony "trumps" the DOT. Jones, 190 F.3d at 1229-1230.   The VE's testimony controls because

the VE's task is to determine whether there are jobs in the region which the claimant can perform

with his precise disabilities or limitations. Id.   Further, the Court of Appeals noted that the DOT

states it is not a comprehensive source of information and that it should be supplemented with local

job information.   Lipson v. Barnhart, 347 F.Supp. 2d 1182, 1189 (M.D. Ala. 2004).   "The VE

provides this vital [supplemental] information". Id. at 1189.   Therefore, the ALJ properly relied on

the VE's testimony even though it was inconsistent with the DOT.   See Jones at 1229.

The Plaintiff also argues the mental demands of a telemarketer are beyond her capabilities

because she lacks the mental capabilities in persistence, concentration, and pace to perform the

required duties.   In 1997, the ALJ found that the Plaintiff was not capable of a full range of light work

---

[4]The Dictionary of Occupational Titles (DOT) lists a specific vocational preparation (SVP) time for each described occupation.  Using the skill level definitions in 20 C.F.R. § 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT.

and thus, called upon a VE to testify as to whether the Plaintiff, given her limitations, was capable of performing her past relevant work. (Tr. 629-632).  The ALJ posed the following hypothetical question:

> Let us assume as is suggested in Exhibit 15-F that in addition to the limitation I've previously given you this individual is emotionally limited to simple, routine, repetitive tasks.  Based on that additional assumption, could this individual do any of the claimant's past work?  (Tr. 631).

The VE answered:

> Again, the position of sales clerk would be more in line with having tasks that are not repetitive in nature.  But the telephone solicitor position does require repetitive task in terms of repeat, repeating the sales pitch, so to speak.  The forms would be completed in a repetitive type of manner, so therefore, it is classified as simple and that it is borderline unskilled to semi-skilled with an SVP of 3.  It is routine and repetitive.  (Tr. 631-632).

The Plaintiff's attorney then inquired as to the telephone solicitor occupation and the  importance of dealing with people in a polite and courteous manner, to which the VE stated was an important skill of the job. (Tr. 632).

The prior ALJ sufficiently addressed the Plaintiff's mental limitations in his hypothetical inquiry to the VE.  The Plaintiff was found moderately limited and  capable of simple and repetitive tasks.  The Plaintiff's limitations resulting in a capability for simple, repetitive tasks were expressly relayed to the VE.  Despite these limitations, however, the VE found the Plaintiff was found capable of handling the demands of a telemarketer.  Clearly, the VE provided substantial evidence to support the ALJ's conclusion.  Therefore, it was not error for the ALJ in this matter to rely on the prior ALJ's decision.

Accordingly, it is now

21

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully recommended** at Fort Myers, Florida, this   14th   day of February, 2007.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: Counsel of record

22